# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN REPUBLICAN PARTY,
LAURA COX, TERRI LYNN LAND,
SAVINA ALEXANDRA ZOE MUCCI,
DORIAN THOMPSON, and HANK
VAUPEL,

Case No.:

Plaintiffs,

Hon.

v.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

JOCELYN BENSON, in her official capacity
as Secretary of State,

Defendant.

---

Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Scott A. Hughes (P75486)
Dykema Gossett PLLC
Counsel for Plaintiffs
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9133
ggordon@dykema.com
jhanselman@dykema.com
shughes@dykema.com

Charles R. Spies (P83260)
Brian D. Shekell (P75327)
Clark Hill PLC
Counsel for Plaintiffs
500 Woodward Avenue
Detroit, MI 48226
(313) 965-8803
cspies@clarkhill.com
bshekell@clarkhill.com

---

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

Plaintiffs Michigan Republican Party, Laura Cox, Terri Lynn Land, Savina Alexandra Zoe Mucci, Dorian Thompson, and Hank Vaupel, by and through their counsel, Dykema Gossett PLLC and Clark Hill PLC, for their Complaint against Defendant Jocelyn Benson, in her official capacity as Secretary of State, allege as follows:

> *Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views. The formation of national political parties was almost concurrent with the formation of the Republic itself. Consistent with this tradition, the Court has recognized that the First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. That is to say, a corollary of the right to associate is the right not to associate. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.*[1]

## INTRODUCTION

1.      This civil rights action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the First and Fourteenth Amendments to the United States Constitution.

2.      At the November 6, 2018 general election, Michigan voters approved a ballot proposal to amend the Michigan Constitution to establish an independent citizens redistricting commission to oversee redistricting of state legislative and congressional districts.

3.      Although marketed to the public and voters as an "independent" commission to redress alleged partisan gerrymandering, the ballot proposal in fact established a partisan public body with commissioner eligibility and selection specifically tied to political affiliation, while also

---

[1] *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574-75 (2000) (internal citations and quotation marks omitted).

disqualifying countless individuals (and their relatives and associates) for current and past political activity and expression.

4.     The ballot proposal creates a system whereby members to a partisan public office are selected without any involvement of state political parties that historically have played a key role in selecting their respective standard bearers.

5.     The ballot proposal permits applicants for commissioner to self-designate their party affiliation without any involvement or consent of the applicable political party and without any specific consideration of the applicants' past or current political activity, expression, or involvement.

6.     The proposal usurps the role of political parties in selecting their nominees for partisan public office, and in the case of the Michigan Republican Party, places that responsibility instead in the hands of a highly partisan elected official of the opposite political party.

7.     At the same time, the proposal penalizes applicants who affiliate with one of the two major political parties by allocating a minority of seats on the commission to each of those pools of applicants.

8.     The ballot proposal constitutes an unconstitutional burden on associational rights, infringes on freedoms of speech, and violates guarantees of equal protection of the laws.

9.     Plaintiffs are not necessarily opposed to the general concept of a redistricting commission, but they vehemently oppose any commission that is structured in a manner that violates their civil rights, as here.

10.     Other states have created redistricting commissions without the same constitutional infirmities and violations that exist as a result of the Michigan ballot proposal.

11.     In Idaho, members of the redistricting commission are appointed by the four state legislative leaders and by the state chairmen of the two largest political parties in the state. Idaho Const., art. 3, § 2.

12.     In Arizona, state legislative leaders appoint four commissioners to an independent redistricting commission, and those four commissioners then select a fifth member of the commission. Additionally, each member must be a registered Arizona voter "who has been continuously registered with the same political party or registered as unaffiliated with a political party for three or more years immediately preceding appointment." Ariz. Const., art 4, pt. 2, § 1.

13.     And in California, which utilizes a random draw process to select some of the redistricting commission members (like in Michigan), the state constitution provides: "Each commissioner shall be a voter who has been continuously registered in California with the same political party or unaffiliated with a political party and who has not changed political party affiliation for five or more years immediately preceding the date of his or her appointment. Each commission members shall have voted in two of the last three statewide general elections immediately preceding his or her application." Cal. Const. art 21, § 2.

14.     No other state with an independent redistricting commission adopts a system like Michigan, where members to partisan public office are selected without any official party registration or the involvement of state political parties or their elected standard bearers and where applicants who affiliate with a major political party are intentionally disfavored.

15.     Plaintiffs bring this action to remedy the constitutional violations arising from the adoption and implementation of the ballot proposal approved in November 2018.

## JURISDICTION AND VENUE

16.     This civil rights action arises under the First and Fourteenth Amendments to the United States Constitution and under federal law, 42 U.S.C. § 1983.

17.     This Court is vested with original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

18.     Venue in this Court is proper under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claim occurred within the district and because Defendant has an office located in Ingham County, which is in the United States District Court, Western District for the State of Michigan.

19.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

## IDENTIFICATION OF PARTIES

20.     Plaintiff Michigan Republican Party ("MRP") is a "major political party" as that term is defined in Section 16 of the Michigan Election Law. Mich. Comp. Laws § 168.16. MRP maintains headquarters at 520 Seymour Street, Lansing, Michigan 48912. MRP is formed for the general purpose of promoting Republican values and for assisting candidates who share those values with election or appointment to partisan federal, state, and local office. MRP brings this action on behalf of itself and its members.

21.     Plaintiff Laura Cox is a resident of Wayne County, Michigan, and is registered and eligible to vote in the State. Cox currently serves as chair of MRP, a position she has held since 2019. Within the past six years, Cox was a declared candidate for the offices of State Representative and State Senator, each a partisan state office. Cox served as Wayne County Commissioner, a partisan local office, from 2005 through 2014, and as a State Representative, a partisan state office, from 2015 through 2018. Cox wishes to serve on the commission but is ineligible under the VNP Proposal because of her past and current political activity.

22.     Plaintiff Terri Lynn Land is a resident of Kent County, Michigan, and is registered and eligible to vote in the State. Land currently serves as chair of the 3rd Congressional District of MRP, a position she has held since February 2019; as a member of the MRP State Committee, the governing body of MRP; and as precinct delegate, a partisan local office. Within the past six years, Land was a declared candidate for the office of United States Senator, a partisan federal office, and for the office of precinct delegate, a partisan local office. Within the past six years, Land also served as the National Committeewoman for MRP, a position she held from approximately May 2012 to January 2014.  Land wishes to serve on the commission but is ineligible under the VNP Proposal because of her past and current political activity.

23.     Plaintiff Savina Alexandra Zoe Mucci is a resident of Van Buren County, Michigan, and is registered and eligible to vote in the State. Mucci is the daughter of Tonya Schuitmaker, a former elected official who served in the office of State Senate, a partisan state office, from 2011 through 2018, and a declared candidate in 2018 for the office of Attorney General, a partisan state office. Mucci wishes to serve on the commission but is ineligible because of her relationship to her mother, Tonya Schuitmaker. But for Mucci's relationship to her mother, she would be an eligible applicant for the commission.

24.     Plaintiff Dorian Thompson is a resident of Wayne County, Michigan, and is registered and eligible to vote in the State. Within the past six years, Thompson was a declared candidate for the office of precinct delegate, a partisan local office, a position he was elected to and now holds. Thompson wishes to serve on the commission but is ineligible under the VNP Proposal because of his past and current political activity.

25.     Hank Vaupel is a resident of Livingston County, Michigan, and is registered and eligible to vote in the State. Within the past six years, Vaupel was a declared candidate for the

office of State Representative, a partisan state office, a position he was first elected to in the November 2014 general election and still holds. Vaupel currently serves as a member of the Livingston County Republican Party Executive Committee, a position he has held since approximately 2015. Vaupel wishes to serve on the commission but is ineligible under the VNP Proposal because of his past and current political activity.

26.     Each of the individual Plaintiffs identified in the preceding paragraphs affiliates with MRP.

27.     Defendant Jocelyn Benson ("Secretary Benson") is the Secretary of State of Michigan and is named in her official capacity. Secretary Benson is the public official primarily responsible for implementing and administering the state constitutional law that is the subject of this action.

## GENERAL ALLEGATIONS

### A.     Adoption of the VNP Proposal

28.     Beginning in 2017, Voters Not Politicians ("VNP"), a ballot-question committee, launched a petition drive to propose amendments to the Michigan Constitution that would establish a commission to oversee redistricting of state legislative and congressional districts (the "VNP Proposal").[2]

29.     In December 2017, VNP submitted an adequate number of signatures to place the proposal on the November 2018 general election ballot.

30.     Prior to the Board of State Canvassers' (the "Board") certification of the petition for the ballot, several plaintiffs filed a complaint in the Michigan Court of Appeals seeking a writ of mandamus directing the Secretary of State and the Board to reject the proposal, arguing the

---

[2] A copy of the full VNP Proposal is attached as Exhibit A.

VNP Proposal could be enacted only through a constitutional convention under Mich. Const. 1963, art. 12, § 3 because it constituted a general revision of the Constitution.

31.    VNP and others were permitted to intervene as defendants and sought a writ of mandamus requiring the proposal to be placed on the ballot.

32.    The Michigan Court of Appeals ordered the Secretary and the Board to place the proposal on the November 2018 general election ballot. *Citizens Protecting Michigan's Constitution v Secretary of State*, 324 Mich. App. 561, 922 N.W.2d 404 (2018).

33.    The Michigan Supreme Court affirmed the Court of Appeals, *Citizens Protecting Michigan's Constitution v Secretary of State*, 503 Mich. 42, 921 N.W.2d 247 (2018), and the proposal was placed on the November 2018 general election ballot.

34.    On November 6, 2018, Michigan voters approved the VNP Proposal, thereby amending the Michigan Constitution.

35.    The state court proceedings involved a challenge to the *procedure* for considering the VNP Proposal to create the redistricting commission, i.e., whether the proposal was eligible for placement on the November 2018 general election ballot only by the convention process of Mich. Const. 1963, art. 12, § 3 or, alternatively, whether it was eligible for placement on the ballot by the initiative process of Mich. Const. 1963, art. 12, § 2.

36.    The prior proceedings in state court did *not* directly involve a constitutional challenge to the substance of the VNP Proposal—that is the subject of this present action.

**B.    Content of the VNP Proposal**

37.    The VNP Proposal, as approved, amended 11 different sections of the Michigan Constitution, including changes to sections regarding the respective powers of the legislative, executive, and judicial branches of state government.

38.     Most significantly, the proposal amended Mich. Const. 1963, art. 4, § 6 to establish a new 13-member independent citizens redistricting commission to oversee redistricting of state legislative and congressional districts.

39.     In general, amended article 4, section 6 establishes the eligibility criteria and the manner of selection for commissioners, provides for the operation and funding of the commission, and outlines the process for the commission's redistricting process.

40.     Mich. Const. 1963, art. 4, § 6, subsection (1) establishes the eligibility criteria for commissioners as follows:

(1) An independent citizens redistricting commission for state legislative and congressional districts (hereinafter, the "commission") is hereby established as a permanent commission in the legislative branch. The commission shall consist of 13 commissioners. The commission shall adopt a redistricting plan for each of the following types of districts: state senate districts, state house of representative districts, and congressional districts. Each commissioner shall:

(a) Be registered and eligible to vote in the State of Michigan;

(b) Not currently be or in the past 6 years have been any of the following:

(i) A declared candidate for partisan federal, state, or local office;

(ii) An elected official to partisan federal, state, or local office;

(iii) An officer or member of the governing body of a national, state, or local political party;

(iv) A paid consultant or employee of a federal, state, or local elected official or political candidate, of a federal, state, or local political candidate's campaign, or of a political action committee;

(v) An employee of the legislature;

(vi) Any person who is registered as a lobbyist agent with the Michigan bureau of elections, or any employee of such person; or

(vii) An unclassified state employee who is exempt from classification in state civil service pursuant to article XI, section 5, except for employees of courts of record, employees of the state institutions of higher education, and persons in the armed forces of the state;

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

(c) Not be a parent, stepparent, child, stepchild, or spouse of any individual disqualified under part (1)(b) of this section; or

(d) Not be otherwise disqualified for appointed or elected office by this constitution.

(e) For five years after the date of appointment, a commissioner is ineligible to hold a partisan elective office at the state, county, city, village, or township level in Michigan.

41. Mich. Const. 1963, art. 4, § 6, part (1)(b) describes disqualifying criteria that exclude from the commission any individual who is, or in the past six years has been, any of the following: a declared candidate for partisan federal, state, or local office; an elected official to partisan federal, state, or local office; an officer or member of the governing body of a national, state, or local political party; or a paid consultant or employee of a federal, state, or local elected official or political candidate, of a federal, state, or local political candidate's campaign, or of a political action committee. These disqualifying criteria largely focus on the political association and expression of the individual and operate as a complete bar to service on the commission.

42. Mich. Const. 1963, art. 4, § 6, part (1)(c) imputes those same disqualifying criteria to family members of an individual disqualified under part (1)(b), including any parent, stepparent, child, stepchild, and spouse of the disqualified individual—regardless whether those individuals have the same political associations, different associations, or none whatsoever, and regardless whether those individuals have engaged in any of the same expressive activities described in part (1)(b).

43. Mich. Const. 1963, art. 4, § 6, subsection (2) establishes a process for selecting commissioners as follows:

(2) Commissioners shall be selected through the following process:

(a) The secretary of state shall do all of the following:

(i) Make applications for commissioner available to the general public not later than January 1 of the year of the federal decennial census. The secretary of state shall circulate the applications in a manner that invites wide public participation from different regions of the state. The secretary of state shall also mail applications for commissioner to ten thousand Michigan registered voters, selected at random, by January 1 of the year of the federal decennial census.

(ii) Require applicants to provide a completed application.

(iii) Require applicants to attest under oath that they meet the qualifications set forth in this section; and either that they affiliate with one of the two political parties with the largest representation in the legislature (hereinafter, "major parties"), and if so, identify the party with which they affiliate, or that they do not affiliate with either of the major parties.

(b) Subject to part (2)(c) of this section, the secretary of state shall mail additional applications for commissioner to Michigan registered voters selected at random until 30 qualifying applicants that affiliate with one of the two major parties have submitted applications, 30 qualifying applicants that identify that they affiliate with the other of the two major parties have submitted applications, and 40 qualifying applicants that identify that they do not affiliate with either of the two major parties have submitted applications, each in response to the mailings.

(c) The secretary of state shall accept applications for commissioner until June 1 of the year of the federal decennial census.

(d) By July 1 of the year of the federal decennial census, from all of the applications submitted, the secretary of state shall:

(i) Eliminate incomplete applications and applications of applicants who do not meet the qualifications in parts (1)(a) through (1)(d) of this section based solely on the information contained in the applications;

(ii) Randomly select 60 applicants from each pool of affiliating applicants and 80 applicants from the pool of non-affiliating applicants. 50% of each pool shall be populated from the qualifying applicants to such pool who returned an application mailed pursuant to part 2(a) or 2(b) of this section, provided, that if fewer than 30 qualifying applicants affiliated with a major party or fewer than 40 qualifying non-affiliating applicants have applied to serve on the commission in response to the random mailing, the balance of the pool shall be populated from the balance of qualifying applicants to that pool. The random selection process used by the secretary of state to fill the selection pools shall use accepted statistical weighting methods to ensure that the pools, as closely as possible, mirror the geographic and demographic makeup of the state; and

(iii) Submit the randomly-selected applications to the majority leader and the minority leader of the senate, and the speaker of the house of representatives and the minority leader of the house of representatives.

(e) By August 1 of the year of the federal decennial census, the majority leader of the senate, the minority leader of the senate, the speaker of the house of representatives, and the minority leader of the house of representatives may each strike five applicants from any pool or pools, up to a maximum of 20 total strikes by the four legislative leaders.

(f) By September 1 of the year of the federal decennial census, the secretary of state shall randomly draw the names of four commissioners from each of the two pools of remaining applicants affiliating with a major party, and five commissioners from the pool of remaining non-affiliating applicants.

44. Mich. Const. 1963, art. 4, § 6, part (2)(a) requires applicants to attest under oath either that they affiliate with one of the two major political parties and, if so, to identify the party with which they affiliate, or that they do not affiliate with either of the major parties.

45. The VNP Proposal does not define "affiliation" for purposes of the oath requirement.

46. The self-designated party affiliation is made without any involvement whatsoever of either of the major parties and without any specific consideration of the applicants' past or current political activity, expression, or involvement.

47. Mich. Const. 1963, art. 4, § 6, part (2)(e) allows each of the four state legislative leaders to strike up to five applicants from any pool or pools of applicants, regardless of the political affiliation of the legislative leader or that of the applicants. In other words, it is very possible—even likely—that a Democratic legislative leader could strike from consideration a commissioner applicant who affiliates with the Republican party, or vice-versa.

48. Mich. Const. 1963, art. 4, § 6, part (2)(f) reserves four commissioner positions to each of the pools of candidates who affiliate with one of the two major political parties, while reserving five commissioner positions to the pool of candidates who do not affiliate with either major party.

49.     Mich. Const. 1963, art. 4, § 6, subsection (11) governs the conduct of the commission and its members, staff, attorneys, and consultants by restricting their speech as follows:

> (11) The commission, its members, staff, attorneys, and consultants shall not discuss redistricting matters with members of the public outside of an open meeting of the commission, except that a commissioner may communicate about redistricting matters with members of the public to gain information relevant to the performance of his or her duties if such communication occurs (a) in writing or (b) at a previously publicly noticed forum or town hall open to the general public.

50.     The VNP Proposal provides that it is self-executing and expressly limits the ability of the Michigan legislature to enact state laws to implement its provisions and address ambiguity and uncertainty in the language of the proposal.

**C.     Implementation of the VNP Proposal**

51.     Under the VNP Proposal, the Secretary of State is primarily responsible for the administration and implementation of the new constitutional provisions concerning the selection of commissioners and creation of a commission.

52.     Secretary Benson is beginning to implement the VNP Proposal.

53.     Secretary Benson has posted informational materials and resources regarding the independent citizens redistricting commission on the official Department of State website and on RedistrictingMichigan.org, including a "citizen's guide" and "timeline," as well as a form for interested individuals to complete in order to receive a commissioner application when it becomes available. See generally https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed August 14, 2019).

54.     Referencing the constitutional amendment, the citizen's guide on the Department of State website states that the following individuals cannot serve on the commission: partisan elected officials, candidates, registered lobbyists and their employees and close relatives.

55. The citizens guide also provides, "The commission must include four people who self-identify with the Democratic Party, four people who self-identify with the Republican Party and five people who self-identify as unaffiliated with either of those political parties."

56. Secretary Benson has also posted for public comment a draft application and eligibility guidelines. See generally https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed August 14, 2019).

57. The draft eligibility guidelines restate the disqualifying criteria and interpret those criteria to extend, for example, to individuals who have declared candidacy for or been elected to the position of precinct delegate.

58. The draft application asks individuals to "describe why—or how—[they] affiliate with either the Democratic Party, Republican Party, or neither." According to the draft, this information is requsted to aid the four state legislative leaders in striking applicants from further consideration.

59. According to various reports, beginning this year Secretary Benson will begin taking additional formal steps to establish the first independent citizens redistricting commission, including the establishment of a project team and making available commissioner applications to the general public and to randomly selected Michigan voters.

60. As part of the Governor's budget proposal, Secretary Benson requested that the Michigan Legislature appropriate approximately $4.6 million in the next budget to implement the VNP Proposal. On information and belief, a portion of that amount was later requested as a supplemental appropriation in the current budget cycle.

61.     Each of the individual Plaintiffs wish to apply to serve on the commission when applications are made available but are ineligible to hold such public office under the terms of the VNP Proposal.

62.     The VNP Proposal is overbroad in its regulation and infringes on Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and under federal law, 42 U.S.C. § 1983.

63.     The VNP Proposal is unconstitutional on its face or, alternatively, as applied to Plaintiffs.

64.     Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

## COUNT I
## VIOLATION OF FREEDOM OF ASSOCIATION

65.     Plaintiffs incorporate by reference the above paragraphs of this Complaint.

66.     The First and Fourteenth Amendments to the United States Constitution guarantee the freedom to join together in furtherance of common political beliefs, commonly referred to as freedom of association.

67.     The freedom of association extends to political parties, including MRP.

68.     MRP's associational rights include the freedom to identify those individuals who do—*and those who do not*—constitute the association.

69.     MRP has regularly and systematically exercised its freedom to identify the individuals who do (and those who do not) constitute the political association, including for example, the selection of nominees for public office through the primary election process and through local and state party conventions.

15

70.     Prior to the November general election every four years, MRP's nominees for secretary of state, attorney general, and various other statewide offices are selected by party delegates at a state convention.

71.     For other partisan pubic offices, MRP plays a substantial and meaningful role in the selection of a party nominee through promotion, endorsements, and campaigning for (or against) candidates, as well as through the traditional vetting process of primary elections.

72.     The VNP Proposal severely burdens MRP's associational rights as follows:

a.     The VNP Proposal permits applicants for commissioner to self-designate their affiliation with MRP without any involvement or consent of the political party and without any specific consideration of the applicants' past or current political activity, expression, or involvement.

b.     Under the VNP Proposal, applicants who are selected to serve as a commissioner based on their individual and unendorsed affiliation with MRP become a public standard bearer of the political party for their term of office as a commissioner.

c.     The VNP Proposal forecloses MRP from promoting and designating its standard bearer for the public office of commissioner—MRP may not play a meaningful role in the selection process by promoting, endorsing, or otherwise campaigning for (or against) any applicant even though the selected applicants who self-designate their affiliation with MRP will become a standard bearer of the party for their term of office.

d.     The VNP Proposal usurps MRP's role in selecting its nominees for the public office of commissioner.

e.     The VNP Proposal permits a member of the opposite major party to play a role in selecting MRP's public standard bearer because state legislative leaders, regardless of their

political affiliation, may strike individuals from pools of applicants who affiliate with either major party. In other words, MRP is not permitted to play a role in selecting its standard bearer, yet the proposal allows a Democratic legislative leader to narrow the pool of applicants who affiliate with MRP.

   f. The VNP Proposal allows for abuse of the traditional political selection process through "party raiding" whereby members of the opposite political party may self-designate a political affiliation with MRP in an effort to alter the party's selection process and weaken its representation on the commission by individuals who genuinely affiliate with MRP.

   g. The VNP Proposal adulterates MRP's process to select nominees for public office—one of the basic functions of a political party—by opening it up to persons whose only act of party affiliation may be checking a box on an application form.

   h. The VNP Proposal forces MRP to have its nominees for the commission—and hence its political and policy positions—determined by those who, at best, may have little to no affiliation with the party and, at worst, are actually adherents of the opposing party.

   i. The VNP Proposal permits Secretary Benson—an elected partisan official—to implement and administer its provisions regarding the party affiliation of applicants and, presumably, to make any determinations necessary to resolve disputes regarding party affiliation; in other words, a *highly partisan* official of the *opposite party* will be in a position to resolve disputes regarding the political association of applicants who claim an affiliation with MRP.

   j. The VNP Proposal disqualifies from the commission countless leaders of MRP, effectively purging from eligibility the party's most engaged affiliates who likely are also the most knowledgeable about redistricting and qualified to serve on the commission.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

k.    The VNP Proposal disqualifies from the commission those individuals who are most easily identified as bona fide affiliates of MRP (including declared candidates, elected officeholders, and party leaders, whether federal, state, or local), leaving MRP (and its affiliated legislative leaders) with almost no reliable means to determine an individual's true political affiliation. This is exacerbated by the fact that Michigan does not have an official system of party registration.

73.    Plaintiffs' associational rights will be severely burdened if Secretary Benson continues to implement the VNP Proposal.

74.    No compelling governmental interest justifies the severe burden imposed on Plaintiffs by the VNP Proposal.

75.    The VNP Proposal is not narrowly tailored to achieve any purported compelling governmental interest.

76.    The VNP Proposal unconstitutionally infringes on Plaintiffs' freedom of association, and Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

## COUNT II
## VIOLATION OF FREEDOM OF ASSOCIATION

77.    Plaintiffs incorporate by reference the above paragraphs of this Complaint.

78.    The First and Fourteenth Amendments to the United States Constitution guarantee the freedom to join together in furtherance of common political beliefs, commonly referred to as freedom of association, and also protect the expression of that association.

79.    The freedom of association extends to political parties, including MRP and its members and leadership.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

80.     Mich. Const. 1963, art. 4, § 6(1)(b) disqualifies from service on the commission individuals who currently express—or in the past six years have expressed—their political affiliation in any of the following ways:

a.      Declaring candidacy for partisan federal, state, or local office.

b.      Serving in partisan federal, state, or local office.

c.      Serving as an officer or member of the governing body of a national, state, or local political party, including but not limited to MRP.

d.      Acting as a paid consultant or employee of a federal, state, or local elected official or political candidate, of a federal, state, or local political candidate's campaign, or of a political action committee, including but not limited to those affiliated with MRP.

81.     Individuals, including the individual Plaintiffs, regularly express their political affiliation with MRP through one or more of the methods described in the preceding paragraph.

82.     Plaintiffs face the untenable decision to either limit their political association and expression or be subject to automatic and absolute exclusion from service on the commission.

83.     The VNP Proposal deters or discourages Plaintiffs from free exercise of their First Amendment rights.

84.     The VNP Proposal severely burdens Plaintiffs' associational rights by excluding individuals from eligibility for public office based on their political expression.

85.     No compelling governmental interest justifies the severe burden imposed on Plaintiffs by the VNP Proposal.

86.     The VNP Proposal is not narrowly tailored to achieve any purported compelling governmental interest.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

87.    The VNP Proposal unconstitutionally infringes on Plaintiffs' freedom of association, and Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

**COUNT III**
**VIOLATION OF FREEDOM OF SPEECH—VIEWPOINT DISCRIMINATION**

88.    Plaintiffs incorporate by reference the above paragraphs of this Complaint.

89.    The First Amendment to the United States Constitution prohibits government from discriminating against speech based on viewpoint.

90.    The VNP Proposal requires applicants to attest under oath either that they affiliate with one of the two major political parties and, if so, to identify the party with which they affiliate, or that they do not affiliate with either of the major parties.

91.    The VNP Proposal reserves only four positions to each of the pools of applicants who affiliate with one of the two major political parties, while reserving a greater number of positions (five) to the pool of candidates who claim that they do not affiliate with either major party.

92.    The VNP Proposal explicitly accounts for the political affiliation of applicants in the selection process.

93.    Applicants who affiliate with one of the two major parties, including MRP, are treated differently than applicants who do not affiliate with either major party.

94.    Applicants who affiliate with one of the two major parties, including MRP, are disfavored because only four positions are reserved to each of the pools of affiliating applicants, while five positions are reserved to the pool of unaffiliating applicants.

95.    MRP adopts particular viewpoints on a number of policy and other issues, views that are advanced through its members and standard bearers elected or appointed to public office.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

20

96.     The VNP Proposal discriminates against applicants based on viewpoint, specifically the viewpoints associated with their respective political affiliation.

97.     The commission's composition under the VNP Proposal intentionally disfavors the viewpoints of MRP by allotting a minority of seats on the commission to applicants who affiliate with MRP.

98.     No compelling governmental interest justifies the viewpoint discrimination.

99.     The VNP Proposal is not narrowly tailored to achieve any purported compelling governmental interest.

100.     The VNP Proposal unconstitutionally infringes on Plaintiffs' freedom of speech, and Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

## COUNT IV
## VIOLATION OF FREEDOM OF SPEECH—RESTRICTED SPEECH

101.     Plaintiffs incorporate by reference the above paragraphs of this Complaint.

102.     Mich. Const. 1963, art. 4, § 6, subsection (11) imposes restrictions on the speech of the commission and its members, staff, attorneys, and consultants.

103.     Plaintiffs wish to apply for the position of commissioner but are deterred in part because of the conditions of public employment described in the preceding paragraphs.

104.     The VNP Proposal subjects commissioners (and staff, attorneys, and consultants for the commission) to unreasonable conditions of employment, including the relinquishment of constitutional rights.

105.     Public officers and employees may not constitutionally be compelled to relinquish First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest.

106.     Redistricting state legislative and congressional districts involves a matter of public concern. Indeed, the First Amendment was fashioned in part to assure the interchange of ideas for bringing about political and social changes—matters unquestionably related to political redistricting.

107.     The VNP Proposal's speech restriction is overbroad and covers subjects not necessarily involving confidential or privileged matters, or matters involving the individual's scope of duties for the commission. For example, under the VNP Proposal, any staff member for the commission would be prohibited from commenting to his or her spouse outside of work on a redistricting issue involving a completely different state, a past redistricting issue, or any other redistricting matter wholly unrelated to that staff member's duties for the commission.

108.     No adequate justification exists for treating the commissioners, members, staff, attorneys, and consultants differently from any other member of the general public with respect to any and all redistricting matters.

109.     No compelling governmental interest justifies the restriction on speech.

110.     The VNP Proposal is not narrowly tailored to achieve any purported compelling governmental interest.

111.     The VNP Proposal unconstitutionally infringes on Plaintiffs' freedom of speech, and Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

## COUNT V
## VIOLATION OF EQUAL PROTECTION

112.     Plaintiffs incorporate by reference the above paragraphs of this Complaint.

113.     The Equal Protection Clause of the Fourteenth Amendment guarantees to all persons equal protection of the laws.

114. Government may not draw distinctions between groups of individuals on differences that are irrelevant to a legitimate government purpose.

115. The VNP Proposal requires applicants to attest under oath either that they affiliate with one of the two major political parties and, if so, to identify the party with which they affiliate, or that they do not affiliate with either of the major parties.

116. The VNP Proposal reserves only four positions to each of the pools of applicants who affiliate with one of the two major political parties, while reserving a greater number of positions (five) to the pool of candidates who do not affiliate with either major party.

117. The VNP Proposal distinguishes between applicants who affiliate with one of the two major political parties and those who do not affiliate with either major party.

118. The classifications concern fundamental rights related to political speech and association.

119. Applicants who affiliate with one of the two major parties, including MRP, are treated differently than applicants who do not affiliate with either major party.

120. Applicants who affiliate with one of the two major parties, including MRP, are disfavored because only four positions are reserved to each of the pools of affiliating applicants, while five positions are reserved to the pool of unaffiliating applicants. In other words, a greater number of seats on the commission are made available to applicants who are unaffiliated with either major political party.

121. The commission's composition under the VNP Proposal intentionally disfavors MRP, as one of the two major political parties, by allotting a minority of seats to applicants who affiliate with MRP.

122.    The VNP Proposal creates a system in which applicants are excluded because of who they are (i.e., affiliates of a major party) and not necessarily because of their past or current activity.

123.    Applicants face the untenable decision to either forego their affiliation with MRP or compete for fewer seats on the commission.

124.    It is plausible that a minor political party could be represented on the commission by a greater number of commissioners than either of the two major political parties.

125.    No compelling governmental interest justifies the disparate, unequal treatment of applicants affiliated with one of the two major political parties, including MRP.

126.    The VNP Proposal is not narrowly tailored to achieve any purported compelling governmental interest.

127.    No governmental interest justifies the disparate, unequal treatment of applicants affiliated with one of the two major political parties.

128.    The unequal treatment of applicants is not rationally related to any governmental interest.

129.    The VNP Proposal denies Plaintiffs equal protection of the laws, and Plaintiffs will be harmed if Secretary Benson continues to implement the VNP Proposal.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter an Order (a) declaring the VNP Proposal unconstitutional under the First and Fourteenth Amendments to the United States Constitution; (b) issue preliminary and permanent injunctive relief enjoining Defendant from implementing, administering, or otherwise enforcing the VNP Proposal; (c) awarding Plaintiffs their costs and expenses of this action, including a reasonable attorneys' fee award, in accordance

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

with 42 U.S.C. § 1988 and other applicable law; and (d) granting Plaintiffs such other and further

relief as the Court deems equitable and just.

Respectfully submitted,


Dated: August 22, 2019

*/s/ Gary P. Gordon*
Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Scott A. Hughes (P75486)
Dykema Gossett PLLC
Counsel for Plaintiffs
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9133
ggordon@dykema.com
jhanselman@dykema.com
shughes@dykema.com


Charles R. Spies (P83260)
Brian D. Shekell (P75327)
Clark Hill PLC
Counsel for Plaintiffs
500 Woodward Avenue
Detroit, MI 48226
(313) 965-8803
cspies@clarkhill.com
bshekell@clarkhill.com