# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN REPUBLICAN PARTY,
LAURA COX, TERRI LYNN LAND,
SAVINA ALEXANDRA ZOE MUCCI,
DORIAN THOMPSON, and HANK
VAUPEL,

Plaintiffs,

v.

JOCELYN BENSON, in her official capacity
as Secretary of State,

Defendant.

Case No.:

Hon.

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

**ORAL ARGUMENT REQUESTED**

Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Scott A. Hughes (P75486)
Dykema Gossett PLLC
Counsel for Plaintiffs
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9133
ggordon@dykema.com
jhanselman@dykema.com
shughes@dykema.com

Charles R. Spies (P83260)
Brian D. Shekell (P75327)
Clark Hill PLC
Counsel for Plaintiffs
500 Woodward Avenue
Detroit, MI 48226
(313) 965-8803
cspies@clarkhill.com
bshekell@clarkhill.com

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## TABLE OF CONTENTS

INDEX OF AUTHORITIES................................................................................................ iii

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND...........................................................................................3

I.      The Parties .........................................................................................................3

        A.      Plaintiffs .................................................................................................3

        B.      Defendant Secretary of State Benson ....................................................3

II.     VNP Proposes a Ballot Initiative to Amend the Michigan Constitution ...........3

III.    The VNP Proposal Significantly Revised the Michigan Constitution................5

        A.      Commissioner Selection Criteria ............................................................6

        B.      Commissioner Selection Process ............................................................7

        C.      Regulations Regarding Commissioner Conduct.....................................8

IV.     Secretary Benson Has Begun Implementing the VNP Proposal ........................9

V.      Other States Have Created Independent Redistricting Commissions Without the Same Constitutional Infirmities of the VNP Proposal.................................10

ARGUMENT ................................................................................................................11

I.      Standard of Review..........................................................................................11

II.     Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Claims .........12

        A.      The VNP Proposal Violates Plaintiffs' Freedom of Association .........13

                1.      The VNP Proposal Violates Plaintiff MRP's Freedom of Association .....14

                2.      The VNP Proposal Violates Individual Plaintiffs' Freedom of Association .........................................................................19

        B.      The VNP Proposal Violates Individual Plaintiffs' Freedom of Speech ...............21

                1.      The VNP Proposal Unlawfully Discriminates Based on Viewpoint .........23

                2.      The VNP Proposal Unlawfully Restricts Entire Topics of Speech...........24

III.    Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claims............27

IV.     Plaintiffs Will Be Irreparably Harmed Without an Injunction .........................30

V.      The Injunction Will Not Harm Others and Furthers the Public Interest............31

VI.     A Preliminary Injunction Furthers the Public Interest ....................................31

CONCLUSION...............................................................................................................32

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## INDEX OF AUTHORITIES

### CASES

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003) ................................................................... 31

*Adkins v. Bd. of Educ.*,
982 F.2d 952 (6th Cir. 1993) ................................................................. 20

*Averett v. United States HHS*,
306 F. Supp. 3d 1005 (M.D. Tenn. 2018) .............................................. 13

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) ................................................................. 11

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ............................................................................... 20

*Bryanton v. Johnson*,
902 F. Supp. 2d 983 (E.D. Mich. 2012) ................................................ 31

*Buckley v. Valeo*,
424 U.S. 1 (1976) ................................................................................... 23

*Cal. Democratic Party v. Jones*,
530 U.S. 567 (2000) ................................................................... 14, 15, 18

*Carey v. Brown*,
447 U.S. 455 (1980) ..................................................................... 28, 29, 30

*Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ............................................................................... 22

*Clements v. Fashing*,
457 U.S. 957 (1982) ............................................................................... 20

*Cohen v. California*,
403 U.S. 15 (1971) ................................................................................. 21

*Connection Distrib. Co. v. Reno*,
154 F.3d 281 (6th Cir. 1998) ........................................................... 11, 12

*Consolidated Edison Co. v. Public Service Comm'n*,
447 U.S. 530 (1980) ............................................................................... 25

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*,
70 F.3d 1474 (6th Cir. 1995) ................................................................. 12

*Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville*,
274 F.3d 377 (6th Cir. 2001) ................................................................. 31

*Democratic Party of U.S. v. Wisconsin ex rel. La Follette*,
450 U.S. 107 (1981) ............................................................................... 14

*Democratic Party of Washington v. Reed*,
343 F.3d 1198 (9th Cir. 2003) ..................................................... 15, 16, 18

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Duke v. Cleland*,
   954 F.2d 1526 (11th Cir. 1992) ........................................................ 17

*Duke v. Massey*,
   87 F.3d 1226 (11th Cir. 1996) ............................................... 16, 17, 18

*Elrod v. Burns*,
   427 U.S. 347 (1976)............................................................... 11, 30

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989)................................................................ 2, 14, 15

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
   23 F.3d 1071 (6th Cir. 1994) .......................................................... 12

*Grizzle v. Kemp*,
   634 F.3d 1314 (11th Cir. 2011) ....................................................... 19

*Hamilton's Bogarts, Inc. v. Michigan*,
   501 F.3d 644 (6th Cir. 2007) .......................................................... 31

*Hill v. Wallace*,
   259 U.S. 44 (1922)................................................................... 12

*King Enters. v. Thomas Twp.*,
   215 F. Supp. 2d 891 (E.D. Mich. 2002)................................................. 13

*Kusper v. Pontikes*,
   414 U.S. 51 (1973)............................................................... 13, 14

*Lane v. Franks*,
   573 U.S. 228 (2014)................................................................... 26

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ........................................................... 31

*Libertarian Party of Ohio v. Husted*,
   751 F.3d 403 (6th Cir. 2014) ....................................................... 11, 12

*McCabe v. Sharrett*,
   12 F.3d 1558 (11th Cir. 1994) ..................................................... 28, 29

*McCutcheon v. FEC*,
   572 U.S. 185 (2014)................................................................... 23

*McNeilly v. Land*,
   684 F.3d 611 (6th Cir. 2012) .......................................................... 30

*Murphy v. Cockrell*,
   505 F.3d 446 (6th Cir. 2007) .......................................................... 26

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)................................................................... 14

*Newsom v. Norris*,
   888 F.2d 371 (6th Cir. 1989) .......................................................... 12

iv

*O'Toole v. O'Connor*,
　802 F.3d 783 (6th Cir. 2015) ................................................ 12

*Overstreet v. Lexington–Fayette Urban County Gov't*,
　305 F.3d 566 (6th Cir. 2002) ................................................ 31

*Pickering v. Bd. of Education*,
　391 U.S. 563 (1968) ............................................................ 26

*Police Dep't of Chicago v. Mosley*,
　408 U.S. 92 (1972) .............................................................. 21

*R.A.V. v. St. Paul*,
　505 U.S. 377 (1992) ............................................................ 22

*Reed v. Town of Gilbert*,
　576 U.S. ___, 135 S. Ct. 2218 (2015) ............................. passim

*Roberts v. United States Jaycees*,
　468 U.S. 609 (1984) ...................................................... 14, 19

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
　515 U.S. 819 (1995) ............................................................ 23

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
　502 U.S. 105 (1991) ............................................................ 22

*Speet v. Schuette*,
　726 F.3d 867 (6th Cir. 2013) ............................................... 12

*Tashjian v. Republican Party of Connecticut*,
　479 U.S. 208 (1986) ............................................................ 14

*Timmons v. Twin Cities Area New Party*,
　520 U.S. 351 (1997) ............................................................ 13

*U.S. Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers*,
　413 U.S. 548 (1973) ............................................................ 20

*United States v. Playboy Entertainment Group, Inc.*,
　529 U.S. 803 (2000) ...................................................... 22, 24

*Williams v. Rhodes*,
　393 U.S. 23 (1968) ................................................... 13, 27, 29

## STATUTES

Mich. Comp. Laws § 168.31 ...................................................... 3

Mich. Comp. Laws § 168.16 ...................................................... 3

Mich. Comp. Laws §§ 15.261-15.275 .................................. 26, 27

Public Acts 128 and 129 of 2011 ............................................... 4

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## CONSTITUTIONAL PROVISIONS

Ariz. Const., art 4, pt. 2, § 1 ............................................................... 11

Cal. Const., art 21, § 2 ........................................................................ 11

Idaho Const., art. 3, § 2 ................................................................. 10, 24

Mich. Const. 1963, art. 4, § 6 ..................................................... passim

U.S. Const. amend. I ......................................................................... 2, 21

U.S. Const. amend. XIV .................................................................... 2, 27

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## INTRODUCTION

This action involves challenges arising from the implementation of the 2018 amendment to the Michigan Constitution that created a new redistricting commission. Although Plaintiffs are not necessarily opposed to the adoption of a redistricting commission, they vehemently oppose the newly adopted system because it discriminates against political parties and violates basic freedoms under the First and Fourteenth Amendments to the United States Constitution as follows:

- Burdening the right of a political party to associate, and its related right not to associate, with individuals;

- Disqualifying individuals from serving on the commission due to their political activity and expression;

- Disqualifying individuals from serving on the commission because of *another person's* political activity and expression;

- Discriminating against individuals based on their political affiliation;

- Restricting speech of individuals related to matters of public concern; and

- Drawing arbitrary distinctions between individuals that burden fundamental rights of political expression and speech.

In 2017, ballot question committee Voters Not Politicians ("VNP") launched a marketing campaign proposing a new redistricting commission purportedly to redress alleged partisan gerrymandering (the "VNP Proposal"). The VNP Proposal instead created a primarily partisan public body with commissioner eligibility and selection specifically tied to political affiliation, while also disqualifying countless individuals and their relatives for current and past political activity and expression. The commission is not "independent" in the political sense because

1

partisan activity and expression is the primary determinant of eligibility for the commission, with the highly partisan Secretary of State acting as the ultimate arbiter of applicants' partisan credentials. The redistricting commission not only discriminates against individuals who have engaged in political activity and expression, but also bars participation of individuals who happen to be related to a disqualified person. In other words, even if an individual has never engaged in any political activity or expression, the VNP Proposals bars that individual from serving on the commission merely because of another person's prior activities. As a result, the VNP Proposal violates the constitutional rights of association, speech, and equal protection, and further implementation of the proposal must be stopped.

Under the VNP Proposal, applicants to the independent redistricting commission may self-designate their party affiliation without any involvement or consent of the political party purportedly represented and without any specific consideration of the applicants' past or current political activity, expression, or involvement. Such a system usurps the role of political parties in selecting their nominees for partisan public office, and in the case of the Michigan Republican Party, places that responsibility instead in the hands of a highly partisan elected official of the opposite political party. Yet "[f]reedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989). The VNP Proposal divests the Michigan Republican Party of its right to select its standard bearers to the commission and unlawfully burdens the speech and associational freedoms of applicants and their relatives and associates, commissioners, and others. Such a system is nonsensical as well as unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

2

## FACTUAL BACKGROUND

I.   **The Parties**

A.   **Plaintiffs**

Plaintiff Michigan Republican Party ("MRP") is a "major political party" as that term is defined in Section 16 of the Michigan Election Law. Mich. Comp. Laws § 168.16. MRP maintains its headquarters at 520 Seymour Street, Lansing, Michigan 48912. MRP is formed for the general purpose of promoting Republican values and assisting candidates who share those values with election or appointment to partisan federal, state, and local office. MRP brings this action on behalf of itself and its members.

Individual Plaintiffs Laura Cox, Terri Lynn Land, Savina Alexandra Zoe Mucci, Dorian Thompson, and Hank Vaupel are residents of the State of Michigan who are registered and eligible to vote in the State. Each individual Plaintiff wishes to serve as a redistricting commissioner, but is disqualified from service pursuant to the VNP Proposal because of their current and past political expression and association or that of a family member. See generally Exhibits A to E, Declarations of Individual Plaintiffs.

B.   **Defendant Secretary of State Benson**

Defendant Jocelyn Benson ("Secretary Benson") is the Secretary of State of Michigan. Secretary Benson, a partisan Democrat, is the public official primarily responsible for implementing and administering the state constitutional law that is the subject of this action. See Mich. Const. 1963, art. 4, § 6; see also MCL 168.31.

II.   **VNP Proposes a Ballot Initiative to Amend the Michigan Constitution**

Prior to approval of the VNP Proposal, every 10 years after the federal decennial census, the Michigan Legislature was tasked with drawing new state legislative and congressional districts. Like any other legislation, members of the State Legislature would introduce, debate,

and ultimately pass bills, in this case to establish the boundaries of Michigan's congressional, state senate, and state house districts. Once passed by the Legislature, the bills would be presented to the Governor of the State of Michigan for approval or veto. If signed by the Governor, the bills would become law and establish the boundaries of the respective legislative seats for that decade. The most recent redistricting legislation was enacted in 2011. See Public Acts 128 and 129 of 2011.

Beginning in 2017, VNP launched a petition drive to propose election-related amendments to the Michigan Constitution. These proposed amendments sought to remove the redistricting process from the Legislature and instead establish an independent citizens redistricting commission to oversee redistricting of state legislative and congressional districts (the "VNP Proposal").[1]

On December 18, 2017, VNP submitted a sufficient number of signatures to place the proposal on the November 2018 general election ballot. Following a legal challenge in State court, the VNP Proposal was placed on the November 2018 general election ballot as Proposal 18-2, as follows:

> A proposed constitutional amendment to establish a commission of citizens with exclusive authority to adopt district boundaries for the Michigan Senate, Michigan House of Representatives and U.S. Congress, every 10 years.
>
> This proposed constitutional amendment would:
>
> - Create a commission of 13 registered voters randomly selected by the Secretary of State:
>
>   o 4 each who self-identify as affiliated with the 2 major political parties; and

---

[1] A copy of the full VNP Proposal is attached as Exhibit F.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

- o 5 who self-identify as unaffiliated with major political parties.

- Prohibit partisan officeholders and candidates, their employees, certain relatives, and lobbyists from serving as commissioners.

- Establish new redistricting criteria including geographically compact and contiguous districts of equal population, reflecting Michigan's diverse population and communities of interest. Districts shall not provide disproportionate advantage to political parties or candidates.

- Require an appropriation of funds for commission operations and commissioner compensation.

On November 6, 2018, Michigan voters approved the VNP Proposal as part of the general election. This approval resulted in various amendments to the Michigan Constitution to establish an independent citizens redistricting commission to oversee redistricting of state legislative and congressional districts.

### III.    The VNP Proposal Significantly Revised the Michigan Constitution

Passage of the VNP Proposal resulted in amendments to 11 different sections of the Michigan Constitution, including changes to constitutional sections regarding the respective powers of all three branches of state government. In addition, the VNP Proposal provides that it is self-executing and expressly limits the ability of the Michigan legislature to enact state laws to implement its provisions and address ambiguity and uncertainty in the language of the proposal, eliminating an opportunity for the Legislature to address constitutional issues with the proposal.

Most significantly, the proposal amended Mich. Const. 1963, art. 4, § 6 to establish a new 13-member independent citizens redistricting commission to oversee redistricting of state legislative and congressional districts.

### A.     Commissioner Selection Criteria

In general, amended article 4, section 6 of the Michigan Constitution establishes the eligibility criteria and the manner of selection for commissioners, provides for the operation and funding of the commission, and outlines the process for the commission's redistricting process.

Mich. Const. 1963, art. 4, § 6, subsection (1) establishes the eligibility criteria for commissioners. While registered and eligible voters in the State of Michigan are generally permitted to participate, the VNP Proposal includes certain criteria that disqualify otherwise eligible voters from serving on the commission. These disqualifying criteria largely focus on the political association and expression of the individual and operate as a complete bar to service on the commission. The specific disqualifying criteria include any individual who is, or in the past six years has been, any of the following:

- a declared candidate for partisan federal, state, or local office;

- an elected official to partisan federal, state, or local office;

- an officer or member of the governing body of a national, state, or local political party;

- a paid consultant or employee of a federal, state, or local elected official or political candidate, of a federal, state, or local political candidate's campaign, or of a political action committee;

- an employee of the legislature;

- a registered lobbyist agent or employee of such person; or

- an unclassified state employee who is exempt from classification in state civil service.

Remarkably, Mich. Const. 1963, art. 4, § 6, part (1)(c) imputes those same disqualifying criteria to family members of an individual disqualified under part (1)(b), including any parent, stepparent, child, stepchild, and spouse of the disqualified individual—regardless whether those

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

individuals have the same political associations, different associations, or none whatsoever, and regardless whether those individuals have engaged in any of the same expressive activities described in part (1)(b). For instance, a current spouse would be disqualified from serving on the commission even if that spouse were not yet married to the political candidate, officeholder, consultant, or legislative employee at the time of the subject political activity. Indeed, the spouse may not have even known the individual at the time he or she was a political candidate, officeholder, consultant, or legislative employee—but marrying a disqualified person causes a springing disqualification of a new spouse or stepchild.

  **B.**  **Commissioner Selection Process**

  Mich. Const. 1963, art. 4, § 6, subsection (2) establishes the process for selecting commissioners, including a requirement that applicants attest under oath whether they affiliate with one of the two major political parties. If the applicant claims that he or she affiliates with one of the two major political parties, the applicant must identify the party with which he or she affiliates. If the applicant does not affiliate with either of the major parties, the applicant must attest as such. Mich. Const. 1963, art. 4, § 6, part (2)(a). Significantly, the VNP Proposal does not define "affiliation" for purposes of the oath requirement, and the self-designated party affiliation is made without any involvement whatsoever of either of the major political parties and without any specific consideration of the applicants' past or current political activity, expression, or involvement.

  Mich. Const. 1963, art. 4, § 6, part (2)(e) allows each of the four state legislative leaders[2] to strike up to five applicants from any pool or pools of applicants, regardless of the political

---

[2] The four legislative leaders include the Senate Majority Leader, the Senate Minority Leader, the Speaker of the House of Representatives, and the Minority Leader of the House of

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

affiliation of the legislative leader or that of the applicants. In other words, it is very possible—even likely—that a Democratic legislative leader could strike from consideration a commissioner applicant who affiliates with the Republican party, or vice-versa.

Mich. Const. 1963, art. 4, § 6, part (2)(f) reserves four commissioner positions to each of the pools of candidates who affiliate with one of the two major political parties, while reserving five commissioner positions to the pool of candidates who do not affiliate with either major party.

### C.      Regulations Regarding Commissioner Conduct

Mich. Const. 1963, art. 4, § 6, subsection (11) governs the conduct of the commission and its members, staff, attorneys, and consultants by restricting their speech. It provides as follows:

> The commission, its members, staff, attorneys, and consultants shall not discuss redistricting matters with members of the public outside of an open meeting of the commission, except that a commissioner may communicate about redistricting matters with members of the public to gain information relevant to the performance of his or her duties if such communication occurs (a) in writing or (b) at a previously publicly noticed forum or town hall open to the general public.

The VNP Proposal therefore bars commissioners, staff, and others from discussion of all redistricting matters, whether or not related to the activities of the commission, except under the extremely limited circumstances of a public meeting or town hall or written communication.

---

Representatives. See generally https://senate.michigan.gov/leadership.html (last accessed Aug. 19, 2019); http://house.michigan.gov/leadership.asp (last accessed Aug. 19, 2019).

**IV.      Secretary Benson Has Begun Implementing the VNP Proposal**

Under the VNP Proposal, the Secretary of State is primarily responsible for the administration and implementation of the new constitutional provisions concerning the selection of commissioners and creation of a commission. This process is already underway.

Secretary Benson has posted informational materials and resources regarding the independent citizens redistricting commission on the official Department of State website and on RedistrictingMichigan.org, including a "citizen's guide" and "timeline," as well as a form for interested individuals to complete in order to receive a commissioner application when it becomes available. See generally https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed Aug. 14, 2019).

The citizen's guide on the Department of State website states that the following individuals cannot serve on the commission: partisan elected officials, candidates, registered lobbyists and their employees and close relatives. The citizens guide also provides, "The commission must include four people who self-identify with the Democratic Party, four people who self-identify with the Republican Party and five people who self-identify as unaffiliated with either of those political parties."

Secretary Benson has also posted for public comment a draft application and eligibility guidelines. See generally https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed Aug. 14, 2019). The draft eligibility guidelines restate the disqualifying criteria and interpret those criteria to extend, for example, to individuals who have declared candidacy for or been elected to the position of precinct delegate.

The draft application asks individuals to "describe why—or how—[they] affiliate with either the Democratic Party, Republican Party, or neither." This information is purportedly

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

required to assist the four state legislative leaders in striking applicants from further consideration.

As part of the Governor's budget proposal, Secretary Benson requested that the Michigan Legislature appropriate approximately $4.6 million in the next budget to implement the VNP Proposal. On information and belief, a portion of that amount was later requested as a supplemental appropriation in the current budget cycle.

According to various reports, beginning this year Secretary Benson will begin taking additional formal steps to establish the first independent citizens redistricting commission, including the establishment of a project team and making available commissioner applications to the general public and to randomly selected Michigan voters.

**V.    Other States Have Created Independent Redistricting Commissions Without the Same Constitutional Infirmities of the VNP Proposal**

Although other states have created redistricting commissions, no other state with an "independent" redistricting commission adopts a system like Michigan, where members to partisan public office are selected without any official party registration or the involvement of state political parties or their elected standard bearers and where applicants who affiliate with a major political party are intentionally disfavored.

For example, in Idaho, members of the redistricting commission are appointed by the four state legislative leaders and by the state chairmen of the two largest political parties in the state. See Idaho Const., art. 3, § 2. In Arizona, state legislative leaders appoint four commissioners to an independent redistricting commission, and those four commissioners then select a fifth member of the commission. Furthermore, each member must be a registered Arizona voter "who has been continuously registered with the same political party or registered as unaffiliated with a political party for three or more years immediately preceding

10

appointment." Ariz. Const., art 4, pt. 2, § 1. And in California, which utilizes a random draw process to select some of the redistricting commission members (like in Michigan), the state constitution provides that "[e]ach commissioner shall be a voter who has been continuously registered in California with the same political party or unaffiliated with a political party and who has not changed political party affiliation for five or more years immediately preceding the date of his or her appointment. Each commission members shall have voted in two of the last three statewide general elections immediately preceding his or her application." Cal. Const., art 21, § 2. Several other states with independent redistricting commissions have adopted similar systems to those in the above states, but none has a system like in Michigan.

## ARGUMENT

### I.      Standard of Review

In a conventional case involving a motion for preliminary injunction, a court must balance four factors: (1) whether the movant demonstrates a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). When a party seeks a preliminary injunction on the basis of an alleged violation of the First Amendment, the determinative factor often is the likelihood of success on the merits because the other factors depend in large part on the constitutionality of the state action. *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014).

"With regard to the factor of irreparable injury, . . . it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); see also *Newsom v. Norris*, 888 F.2d 371, 378 (6th

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."). Therefore, to the extent the movant establishes a likelihood of success on the merits of its First Amendment claims, it also has established irreparable injury. *Husted*, 751 F.3d 403.

Consideration of the public interest is also dependent on the determination of the likelihood of success on the merits because "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Reno*, 154 F.3d at 288 (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); see also *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]he public as a whole has a significant interest in . . . protection of First Amendment liberties."). Because the factors of irreparable harm and consideration of the public interest largely depend on whether a constitutional violation exists, the likelihood of success is the crucial inquiry.

## II.     Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Claims

Where a plaintiff makes a facial challenge to the constitutionality of a law under the First Amendment, the facial challenge is an overbreadth challenge." *O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015) (citing *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013)). "To prevail, a plaintiff must show substantial overbreadth: that the statute prohibits a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]" *Id.* (citing *Speet*, 726 F.3d at 872) (internal quotation marks omitted).

The VNP Proposal here unquestionably prohibits a substantial amount of protected expression and speech, both in an absolute sense and due to the sweeping overbreadth of the proposal relative to any legitimate regulatory need. Moreover, the challenged provisions are inextricably intertwined with the entire VNP Proposal and cannot be severed. See, e.g., *Hill v. Wallace*, 259 U.S. 44, 70 (1922) ("[The severability clause] did not intend the court to dissect an

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court."); *Averett v. United States HHS*, 306 F. Supp. 3d 1005, 1022 (M.D. Tenn. 2018) (holding an invalid provision of a rule not severable because its provisions were intertwined); *King Enters. v. Thomas Twp.*, 215 F. Supp. 2d 891, 918 (E.D. Mich. 2002) (holding invalid under the First Amendment provisions of an ordinance because its provisions were "inextricabl[y] intertwined"). Accordingly, Plaintiffs are likely to succeed on the merits of their First Amendment claims, and this Court should enjoin implementation of the entire VNP Proposal.

### A.    The VNP Proposal Violates Plaintiffs' Freedom of Association

In *Kusper v. Pontikes*, 414 U.S. 51 (1973), the Supreme Court noted that "[t]here can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments." *Id.* at 56-57 (citing *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). Drawing upon past decisions, the court in *Kusper* stated that "a significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest. For even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty." *Id.* at 58-59 (internal quotations and citations omitted).

For these reasons, "precision of regulation must be the touchstone in an area so closely touching our most previous freedoms. If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." *Id.* at 59 (internal quotations and citations omitted); see also *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("Regulations imposing severe burdens on [parties'] rights must be narrowly tailored and advance a compelling state interest").

13

> 1. *The VNP Proposal Violates Plaintiff MRP's Freedom of Association*

The Supreme Court has long recognized the right of association as an inseparable aspect of the "liberty" protected by the First Amendment. See *Kusper* at 56-57; see also *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) (recognizing that the "elements of speech, assembly, association, and petition, though not identical, are inseparable" (internal quotation marks omitted)). This associational freedom includes the right to engage in *collective action* in order to advance common political interests. *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). Included within this First Amendment right to collective action is the right of a political party to select its "standard bearer." See *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989) ("Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders."); see also *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 224 (1986) ("The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution."); *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 124 (1981) ("A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution.").

The right of a political party to select its standard bearers and to exclude persons from membership that it believes do not represent its ideals was analyzed and discussed in *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000), in which the Supreme Court recognized:

> The formation of national political parties was almost concurrent with the formation of the Republic itself. Consistent with this tradition, the Court has recognized that the First Amendment protects the freedom to join together in furtherance of common political beliefs, ***which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the***

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

> ***association to those people only***. That is to say, a corollary of the
> right to associate is the right not to associate.

*Id.* at 574 (2000) (emphasis added) (internal citations and quotation marks omitted). In sum, "[f]reedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Id.*

In *Jones*, the court considered a challenge to an initiative passed by voters in California that changed the State's partisan primary to a blanket primary. *Id.* at 570. Under the blanket primary, each voter's primary ballot listed every candidate regardless of party affiliation and allowed the voters to "choose freely among them." *Id.* California's four major political parties subsequently brought suit alleging that California's blanket primary violated their First Amendment rights of association. *Id.* at 571.

The court noted that its history of cases "vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences.'" *Id.* at 575 (quoting *Eu*, 489 U.S. at 224). In striking down the initiative as unconstitutional, the court held that California's blanket primary was not narrowly tailored to serve a compelling state interest, as it forced the state's political parties to "adulterate their candidate-selection process—the 'basic function of a political party'—by opening it up to persons wholly unaffiliated with the party." *Id.* at 581.

In *Democratic Party of Washington v. Reed*, 343 F.3d 1198, 1204 (9th Cir. 2003), the Ninth Circuit struck down a similar blanket primary adopted by the State of Washington. In so doing, the court highlighted the constitutional violation that occurs when a state divests a

15

political party of its right to select a standard-bearer or exclude those who do not meet its criteria:

> [T]hose who actively participate in partisan activities, including activities such as holding precinct caucuses in their homes, serving on local and state party committees, contributing money to their parties, canvassing, and watching polls for their parties, have a First Amendment right to further their party's program for what they see as good governance. Their right to freely associate for this purpose is thwarted because the Washington statutory scheme prevents those voters who share their affiliation from selecting their party's nominees. ***The right of people adhering to a political party to freely associate is not limited to getting together for cocktails and canapes. Party adherents are entitled to associate to choose their party's nominees for public office.*** As for the State of Washington's argument that the party nominees chosen at blanket primaries "are the 'nominees' not of the parties but of the electorate," that is the problem with the system, not a defense of it. Put simply, the blanket primary prevents a party from picking its nominees.

*Id.* at 1204 (emphasis added). Stated differently, "[t]he First Amendment protects the right of freedom of association with respect to political parties, and this right includes the right not to associate. In no area is the political association's right to exclude more important than in the process of selecting its nominee." *Id.* (internal quotation marks omitted).

A political party's constitutionally protected right to choose its standard bearer and to exclude those who do not meet its criteria or share its ideology is perhaps best exemplified by a decision involving disgraced political figure David Duke, who sought the Republican Party's nomination for President of the United States in 1992. See *Duke v. Massey*, 87 F.3d 1226 (11th Cir. 1996). *Duke* involved a challenge to a decision by leaders of the Georgia Republican Party to exclude Duke from the presidential primary ballot. Duke and a number of individual voters filed suit alleging that their constitutional rights were violated by Duke's exclusion from the primary.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

The Eleventh Circuit ultimately upheld Duke's exclusion from the Republican Party primary ballot because "Duke does not have a right to associate with an 'unwilling partner.'" *Id.* at 1232 (citing *Duke v. Cleland*, 954 F.2d 1526, 1530 (11th Cir. 1992)). While Duke possesses First Amendment interests, the court reasoned, "those interests do not trump the Republican Party's right to identify membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself." *Id.* at 1232-33.

Similar to the challenged regulations in these cases, the VNP Proposal violates MRP's fundamental right to associate and, conversely, its right not to associate. Under the current system, applicants for commissioner self-designate their affiliation with one of the two major political parties without any involvement or consent of that political party. This is particularly problematic given that Michigan does not have a system of party registration as a preexisting validator of intent, and the VNP Proposal does not define, explain, or in any way seek to clarify what it means to "affiliate" with a political party, so there is no practical way to verify the self-designation of party affiliation. Thus, the proposal disqualifies those individuals who are most easily identified as bona fide affiliates of MRP (including declared candidates, elected officeholders, and party leaders, whether federal, state, or local), leaving MRP (and its affiliated legislative leaders) with almost no reliable means to determine an individual's true political affiliation. The VNP Proposal can, and likely will, result in a situation where those who do not represent MRP's interests are selected as Republican commissioners and, by implication, standard bearers of the political party.[3] This constitutionally infirm process is why the Eleventh

---

[3] The VNP Proposal disqualifies MRP's most active and engaged affiliates who, in many cases, are also the most experienced and knowledgeable about redistricting. Thus, the VNP Proposal further burdens MRP's associational rights by disqualifying its standard bearers who are most qualified to serve on the commission.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Circuit upheld the Georgia Republican Party's decision to exclude Duke from the Republican primary. See *Duke*, 87 F.3d 1226.

These potential adverse outcomes are not remote or speculative, but instead are the very outcomes contemplated by courts that have struck down political selection processes that are conducted without the political party's involvement. See *Reed*, 434 F.3d at 1204 ("The Washington scheme denies party adherents the opportunity to nominate their party's candidate free of the risk of being swamped by voters whose preference is for the other party.") Those who are selected to become Republican commissioners become standard bearers of the party, yet the VNP Proposal divests MRP of any role in selecting its standard bearers on the commission even though Republican commissioners will speak as apparent representatives of the party. Such a system cannot withstand constitutional scrutiny. See *Jones*, 552 U.S. at 575 (recognizing that freedom of group association of a political party presupposes the freedom to "select[] a standard bearer who best represents the party's ideologies and preferences.").

The VNP Proposal goes even further in violating MRP's associational rights by allowing a "legislative leader" of the *opposite* political party to strike Republican applicants. Thus, the VNP Proposal not only determines Plaintiffs' association through random chance, but it also allows the Democratic Party to exercise control over the Republican Party by permitting Democratic legislative leaders the ability to strike Republican applicants. This improper influence on a political party's selection process is precisely the type of unconstitutional activity struck down by the courts in *Jones* and *Reed*.

The State cannot determine who does and does not constitute Plaintiffs' association, and the State cannot force MRP to associate with individuals against its will. MRP has a high likelihood of succeeding on the merits of its First Amendment associational claim.

18

2.      *The VNP Proposal Violates Individual Plaintiffs' Freedom of Association*

Similarly, the VNP Proposal violates individual Plaintiffs' freedom of association. Government regulation that infringes on associational freedom, like the VNP Proposal, can take many forms. See *Roberts*, 468 U.S. at 622-23 ("Government actions that may unconstitutionally infringe upon this freedom can take a number of forms. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group; it may attempt to require disclosure of the fact of membership in a group seeking anonymity; and it may try to interfere with the internal organization or affairs of the group." (internal citations omitted)).

Here, the VNP Proposal excludes the individual Plaintiffs and a significant number of other persons from participation on the commission due to the overly broad disqualifying criteria, which are predominantly based on political activity and expression. Essentially, the proposal seeks to bar any applicant who, in the preceding six years, has sought to advance political matters through their political associational activities, including declared candidacy for partisan office, holding partisan elected office, political party leadership, and other similar criteria. See Mich. Const. 1963, art. 4, § 6; see also *Grizzle v. Kemp*, 634 F.3d 1314, 1325 (11th Cir. 2011) ("Candidacy for office is one of the ultimate forms of political expression in our society.").

Acting as an absolute bar to eligibility to serve on the commission, the disqualifying criteria deny Plaintiffs the opportunity to seek a public office and from public employment with the commission.[4] It is well settled that government may not permissibly deny employment based on the exercise of First Amendment freedoms. See *Adkins v. Bd. of Educ.*, 982 F.2d 952, 955-56

_____

[4] See generally Mich. Const. 1963, art. 4, § 6(3) and (5) (establishing the term of office and providing for a minimum salary for commissioners, respectively).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

(6th Cir. 1993) ("Although [the plaintiff] had no property right to continued employment *she had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association*. That such a right exists cannot be denied, at least since the Supreme Court's decision in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)." (emphasis added)). Fully precluding Plaintiffs from an opportunity to serve on the commission, the disqualifying criteria impose a substantial burden on Plaintiffs' political association, imposing an impossible choice between foregoing First Amendment political activities that further their association with the Republican Party, on the one hand, and continuing their political activities at the cost of deemed ineligibility from the commission, on the other hand. Although some government regulation of political activity may be justified in certain cases, the VNP Proposal goes much too far.

The VNP Proposal exceeds the limits of permissible government regulation of political participation that have been upheld previously, for example, in *U.S. Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548 (1973) (upholding a provision of the Hatch Act that prohibited executive branch federal employees from participating in certain political activities); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973) (involving a state statute that restricted political activities of civil servants); and *Clements v. Fashing*, 457 U.S. 957 (1982) (upholding a state constitutional regulation that limited current public officials' access to candidacy for other political offices). In each of these prior cases, the subject regulations involved restrictions on activities of public officials *during their current term of office*. The subject regulations did not, however, limit an individual's access to public office because of *prior* politically expressive activities, like the regulations at issue in this case.

20

The VNP Proposal is much more severe. It does not simply limit political activity only during an individual's term of office on the commission to address undue influence, or the appearance of influence, by current public employees. Rather, it creates a prospective, *total bar* to service on the commission based on *past* political activities regardless whether that political activities would continue during the individual's term of office. Worse yet, the disqualification is also imputed to the family members of such individuals, whether or not those family members personally participated at all in the subject political activities. See Mich. Const. 1963, art. 4, § 6, part (1)(c). Such a system is far too reaching and cannot withstand scrutiny. Consequently, Plaintiffs are likely to succeed on the merits of their claim.

### B.     The VNP Proposal Violates Individual Plaintiffs' Freedom of Speech

The First Amendment to the United States Constitution prohibits the enactment of any law "abridging the freedom of speech." U.S. Const. amend. I. According to the Supreme Court, that clause "is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, . . . in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests." *Cohen v. California*, 403 U.S. 15, 24 (1971).

Pursuant to the First Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. ___, 135 S. Ct. 2218, 2226 (2015) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "***Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional*** and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citing *R.A.V. v. St.*

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991)) (emphasis added).

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227 (citing cases). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000).

> This is for good reason. "The line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn." Error in marking that line exacts an extraordinary cost. It is through speech that our convictions and beliefs are influenced, expressed, and tested. It is through speech that we bring those beliefs to bear on Government and on society. It is through speech that our personalities are formed and expressed. The citizen is entitled to seek out or reject certain ideas or influences without Government interference or control.

*Id.* at 1888-89 (internal citations omitted).

In this case, the VNP Proposal violates the freedom of speech embodied in the First Amendment because it specifically and overtly regulates speech based on content, including regulations based on the motivating ideology and perspective of the speaker and the outright prohibition of entire topics of speech—topics involving core political speech at the heart of the First Amendment. The State cannot overcome its burden to justify the constitutionality of these unprecedented speech restrictions.

1.     *The VNP Proposal Unlawfully Discriminates Based on Viewpoint*

"Government discrimination among viewpoints—***or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'***—is a 'more blatant' and 'egregious form of content discrimination.'" *Reed*, 135 S. Ct. at 2230 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)) (emphasis added). The United States Supreme Court has recognized, "the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." *McCutcheon v. FEC*, 572 U.S. 185, 207 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976)).

Contrary to these basic principles, the VNP Proposal in no uncertain terms regulates speech and expression based on the "specific motivating ideology or the opinion or perspective of the speaker." *Reed*, 135 S. Ct. at 2230. The VNP Proposal first requires applicants to attest under oath either that they affiliate with one of the two major political parties and, if so, to identify the party with which they affiliate, or that they do not affiliate with either major party. Mich. Const. 1963, art. 4, § 6, part (2)(a). The proposal then establishes a process to determine the composition of the commission based on those attested political affiliations, reserving four seats for each pool of applicants who affiliate with one of the major political parties and five seats for the pool of applicants who attest they do not affiliate with either major party. Mich. Const. 1963, art. 4, § 6, part (2)(d)-(f). Stated differently, through the specific allocation of commissioner seats based on party affiliation—*a minority of which are reserved to each of the major political parties*—the VNP Proposal seeks to suppress speech and expression motivated by Republican ideologies and perspectives, while enhancing the perspectives of commissioners who are unaffiliated with either major party by allocating more seats to that pool of applicants.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Such a system unconstitutionally burdens freedom of speech and cannot withstand judicial scrutiny. See *Reed*, 135 S. Ct. at 2230.

To the extent such regulations are intended to promote the actual or perceived "independence" of the redistricting commission, those allegedly benign motives cannot save the VNP Proposal. "Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Reed*, 135 S. Ct. at 2229. Accordingly, it is irrelevant that the proposal was well-intentioned as a mechanism to promote independence, if that in fact is the case. What is relevant is that the VNP Proposal creates a system whereby speech is regulated based on the specific motivating ideology or political perspective of the speaker—contrary to the First Amendment. *Id.* at 2230.

Any number of alternatives exist to the system established under the VNP Proposal. For example, like in Idaho, members of the redistricting commission could be appointed by the four state legislative leaders and by the state chairmen of the two largest political parties in the state. See Idaho Const., art. 3, § 2. Or the four state legislative leaders could appoint some of the commissioners to the independent redistricting commission, and those commissioners could then select additional members of the commission, like the system in Arizona. But Plaintiffs do not bear the burden of outlining a new proposal that would withstand constitutional scrutiny. It is adequate that less restrictive alternatives exist. See *Playboy Entertainment Group, Inc.*, 529 U.S. at 816. The State cannot overcome its burden to justify these regulations.

2.     *The VNP Proposal Unlawfully Restricts Entire Topics of Speech*

The VNP Proposal also imposes a content-based regulation that prohibits speech regarding an entire topic, one involving core political speech that is at the heart of First

24

Amendment protection. Mich. Const., art. 4, § 6, subsection (11) provides in relevant part as follows:

> ***The commission, its members, staff, attorneys, and consultants shall not discuss redistricting matters with members of the public*** outside of an open meeting of the commission, except that a commissioner may communicate about redistricting matters with members of the public to gain information relevant to the performance of his or her duties if such communication occurs (a) in writing or (b) at a previously publicly noticed forum or town hall open to the general public. [Emphasis added.]

According to the Supreme Court, "it is well established that '[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'" *Reed*, 135 S. Ct. at 2230 (quoting *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 537 (1980)). A speech regulation targeted at a specific subject matter is content-based even if the regulation does not discriminate among viewpoints. *Reed*, 135 S. Ct. at 2230.

It cannot be disputed that the speech regulations of the VNP Proposal target a specific subject matter—redistricting—and, therefore, the speech regulations are content based. Consequently, the regulations are subject to strict scrutiny. *Reed*, 135 S. Ct. at 2226 ("Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests). The State cannot overcome its burden of proving the constitutionality of the VNP Proposal because the speech regulations are not narrowly tailored to serve a compelling state interest.

As an initial matter, the Supreme Court has rejected the notion that public employees and officials "may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the [institution] in which they work." *Pickering v. Bd. of Education*, 391 U.S.

563, 568 (1968); see also *Lane v. Franks*, 573 U.S. 228, 231 (2014) ("Almost 50 years ago, this Court declared that citizens do not surrender their First Amendment rights by accepting public employment."); *Murphy v. Cockrell*, 505 F.3d 446, 451 (6th Cir. 2007) ("[T]he First Amendment protects the right of public employees to participate in speech involving public affairs."). Stated differently, the government cannot justify the speech regulations by the mere fact of employment on the commission by the regulated individuals, as the topic of restricted speech concerns matters of public interest; in fact, it concerns a matter of core political speech regarding the shaping of legislative districts that create the foundation of representative democracy of the State.

In this case, there is no compelling governmental interest to justify the constitutional speech regulation prohibiting the commission and its members, staff, attorneys, and consultants from public discussion of any and all "redistricting matters." Mich. Const., art. 4, § 6(11). Michigan (presumably like most states) generally requires that a public body deliberate toward and render *decisions* in an open meeting. See generally Mich. Comp. Laws §§ 15.261-15.275. However, Plaintiffs are unaware of any state regulation that purports to entirely restrict the ability of an elected or appointed public official from any and all discussions with members of the public regarding a matter of public concern, like the VNP Proposal. Indeed, appointed and elected public officials often do—and in fact are expected to—interact with constituents and members of the public outside of formal public meetings. The restrictions of the VNP Proposal, which purport to limit discussion on a matter of public interest, cannot be justified by any compelling governmental interest.

To the extent the State alleges a compelling governmental interest to justify the speech regulation, it nevertheless remains constitutionally infirm because it is not narrowly tailored. To

the contrary, the regulation is all encompassing, restricting speech in private and on redistricting matters wholly unrelated to the work of the commission, and it encompasses all commission staff, including individuals who will have no policymaking authority whatsoever with respect to the commission. The regulations do not seek to protect only confidential or privileged matters—the restriction extends to discussion of *any* redistricting matters. The VNP Proposal cannot survive strict scrutiny. See *Reed*, 135 S. Ct. at 2226.

Michigan law already establishes a less restrictive alternative to the VNP Proposal—the requirement in the Open Meetings Act that members of a public body deliberate toward and render decisions in an open meeting. See generally Mich. Comp. Laws §§ 15.261-15.275. The sweep of the VNP Proposal is far too broad and unconstitutionally restricts speech.

### III.    Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment prohibits the State from denying to any person equal protection of the laws. U.S. Const. amend. XIV. In other words, the State must govern impartially and not draw arbitrary distinctions between individuals that are not related to a legitimate governmental purpose. Where the State draws distinctions in a way that implicates fundamental rights, the regulation must be justified by a compelling government interest. See, e.g., *Williams v. Rhodes*, 393 U.S. 23, 31-32 (1968) ("The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. . . . In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'"). Here, the VNP Proposal draws distinctions between applicants for the commission in two important ways, neither of which can survive judicial scrutiny.

27

First, numerous would-be applicants are disqualified from service due to current or past political activity, pursuant to criteria described in Mich. Const. 1963, art. 4, § 6, part (1)(b). These criteria thus distinguish between "qualified" applicants and "disqualified" applicants, withholding a potential benefit (service on the commission) from individuals because of their past or current exercise of a fundamental right. *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) ("The right of expressive association—the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion—is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms. Both the intimate and the ***expressive association rights are considered fundamental***." (internal citations omitted) (emphasis added)). The disqualifying criteria create arbitrary distinctions between individuals that are neither justified by a compelling government interest, nor narrowly tailored to achieve that purpose. *Carey v. Brown*, 447 U.S. 455, 461-62 (1980) ("When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized.").

Second, qualified applicants are further distinguished based on their designated political affiliation, or lack of affiliation, with one of the two major political parties, including MRP. Specifically, applicants who attest that they do *not* affiliate with either major political party receive the benefit of a larger final applicant pool (a pool of 80 applicants who do not affiliate with either major party as compared to 60 applicants each who affiliate with one of the major parties). Mich. Const. 1963, art. 4, § 6, subpart (2)(d)(ii). Applicants from the final pools are ultimately selected under a system that intentionally disfavors applicants who affiliate with a

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

major party, with a minority (four) of seats reserved to each pool of applicants who affiliate with a major party, while five seats are reserved for applicants who do not affiliate with either major party. These classifications, which again are based on protected political association, create arbitrary distinctions between individuals in a manner that burdens fundamental rights under the United States Constitution. See *Carey*, 447 U.S. at 463 ("Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. ***There is an 'equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard.***" (emphasis added)); *Williams*, 393 U.S. 23 (holding unconstitutional a state election law that gave a decided advantage to certain political parties); see also *McCabe*, 12 F.3d at 1563. These arbitrary distinctions are neither justified by a compelling government interest, nor narrowly tailored to achieve that purpose.

Numerous less restrictive means are available to advance any purported interest for these distinctions. For example, the VNP Proposal could have allocated an equal number of seats to political parties, or like commissions in other states, the proposal could have allowed legislative leaders to appoint members to the commission without any consideration of the political affiliation of the appointee. With respect to the disqualifying criteria, the VNP Proposal could have limited outside political activity during the term of service of the commissioners, rather than barring individuals for past political activity that may have occurred nearly six years prior to creating the commission and may be premised on *another person's* political activities. Again, a

variety of less restrictive means are available, so the State cannot satisfy its burden to show that these regulations are narrowly tailored. See *Carey*, 447 U.S. 455.

Plaintiffs are likely to prevail on the merits of their Equal Protection claim because the State cannot justify these invidious distinctions under the VNP Proposal.

## IV. Plaintiffs Will Be Irreparably Harmed Without an Injunction

Plaintiffs will suffer irreparable injury if a preliminary injunction is not entered. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *McNeilly v. Land*, 684 F.3d 611, 620 (6th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). In fact, even the *threat* of Plaintiffs being deprived a constitutional right is sufficient to weigh in favor of a finding on this prong of the analysis. See *Elrod*, 427 U.S. at 373 ("It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

In this case, MRP and the individual Plaintiffs have experienced actual and threatened harm as a result of the VNP Proposal. Both the VNP Proposal's express language and Secretary Benson's communications have informed Plaintiffs that they cannot serve on the commission. In fact, Secretary Benson has already begun to implement the commissioner application process. She has posted informational materials and resources regarding the independent citizens redistricting commission on the official Department of State website and on RedistrictingMichigan.org, including a "citizen's guide" and "timeline," as well as a form for interested individuals to complete in order to receive a commissioner application when it becomes available.

Because Plaintiffs will suffer irreparable injury if a preliminary injunction is not granted, Plaintiffs have satisfied this prong of the preliminary injunction test.

30

**V.    The Injunction Will Not Harm Others and Furthers the Public Interest**

In a First Amendment case such as this, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Hamilton's Bogarts, Inc. v.* Michigan, 501 F.3d 644, 649 (6th Cir. 2007). "[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001).

As set forth above, Plaintiffs have demonstrated a likelihood of success on the merits of their claims that the VNP Proposal is unconstitutional. This showing precludes Secretary Benson or any third party from credibly asserting that any purported harm to others weighs against issuance of a preliminary injunction in this case. Indeed, there is none. This prong of the preliminary injunction test weighs in favor of Plaintiffs.

**VI.    A Preliminary Injunction Furthers the Public Interest**

The fourth prong of the preliminary injunction test is also satisfied in this case because "the public clearly has an interest in vindicating constitutional rights." *Bryanton v. Johnson*, 902 F. Supp. 2d 983 (E.D. Mich. 2012) (quoting *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 579 (6th Cir. 2002)). This is because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); see also *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("Neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.").

In this case, Plaintiffs have set forth specific constitutional violations from the current and continued implementation of the VNP Proposal. This alone should result in a preliminary

injunction being entered. Additional public harm is also certain to occur if a preliminary injunction is not entered. This includes Secretary Benson's potentially inaccurate statements to Michigan citizens regarding commissioner application and selection criteria. Secretary Benson has already published a "citizen's guide" and "timeline," as well as a form for interested individuals to complete in order to receive a commissioner application when it becomes available. See generally https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed Aug. 14, 2019). Secretary Benson has also posted for public comment a draft application and eligibility guidelines. See https://www.michigan.gov/sos/0,4670,7-127-1633_91141---,00.html (last accessed Aug. 14, 2019). The draft eligibility guidelines restate the disqualifying criteria and interpret those criteria to extend to individuals who have declared candidacy for or been elected to the position of precinct delegate. Moreover, Secretary Benson has requested that the Michigan Legislature appropriate approximately $4.6 million in the next budget to implement the VNP Proposal. These potentially unnecessary budget appropriations will divert limited funds away from other areas in need of funding. There exists a strong public interest in avoiding wasteful government spending. A preliminary injunction should be entered.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that the Court grant their Motion for a Preliminary Injunction and enter an Order enjoining Defendant Secretary of State, and her employees and agents, from implementing all provisions of the VNP Proposal and granting Plaintiffs such other relief as the Court deems equitable.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Respectfully submitted,

Dated: August 22, 2019

*/s/ Gary P. Gordon*

Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Scott A. Hughes (P75486)
Dykema Gossett PLLC
Counsel for Plaintiffs
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9133
ggordon@dykema.com
jhanselman@dykema.com
shughes@dykema.com


Charles R. Spies (P83260)
Brian D. Shekell (P75327)
Clark Hill PLC
Counsel for Plaintiffs
500 Woodward Avenue
Detroit, MI 48226
(313) 965-8803
cspies@clarkhill.com
bshekell@clarkhill.com

113759.000004  4826-6692-7519.3

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

33